IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID L BRIGGS, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )   Case No.: **3:11-cv-00801-JPG-PMF** |
| | ) |
| RANDY J DAVIS, *et al.*, | ) |
| | ) |
|        Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is the Defendants' (Doc. 25) motion to dismiss. For the following reasons, it is recommended that the (Doc. 25) motion to dismiss be granted.

On September 1, 2011, Plaintiff David L. Briggs filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. The Court screened the complaint pursuant to its authority in 28 U.S.C. § 1915A on August 22, 2012. *See* Doc. 8. In that order, the Court characterized Briggs' allegations as follows:

> Plaintiff claims that Defendant Tony Lehr ("Lehr") failed to protect Plaintiff. Specifically, Plaintiff's cellmate threatened to "get blood" from Plaintiff if he did not have family members transfer one hundred dollars to the cellmate's trust fund account within twenty-four hours. Plaintiff wrote a note to Defendant Lehr informing him of this threat, and Lehr did not take any action to protect Plaintiff. He also asserts claims against defendants C/O Clark, Greg James, Major Edwards, and Lt. Bradly for failure "to take disciplinary or other action to curb the known pattern of [the cellmate's] violent history." Specifically, after Plaintiff was let out of segregation, his former cellmate once again threatened him while they were both in the chow hall.
>     Plaintiff also claims that Defendant Ronald K. Walla ("Walla") issued a false disciplinary report to Plaintiff. Specifically, Defendant Walla issued a disciplinary report stating that Plaintiff refused to cuff up and refused housing; however, Plaintiff was told he had no choice but to go to segregation while the threat to his life was investigated. He did not contest that order. Plaintiff further asserts claims against Defendants Marcus A. Myers ("Myers"), Brett A.

1

>Klindworth ("Klindworth"), Randy J. Davis ("Davis"), and S.A. Godinez ("Godinez") for their roles in finding him guilty of and denying his grievances concerning the false disciplinary report.

*Id*. at 1-2. After the reviewing the complaint, the Court found that Briggs stated causes of actions for two claims:

>**Count 1:** A claim against Defendants Lehr, Clark, James, Edwards, and Bradly for failure to protect.
>
>**Count 2:** A claim against Defendants Walla, Myers, Klindworth, Davis, and Godinez, for issuing a false disciplinary report after Plaintiff reported a threat to Plaintiff's life.

*See id*. at 2. However, the Court also dismissed four Defendants because Briggs' allegations regarding the denial of his grievance failed to state a claim upon which relief can be granted. *See id*. Another Defendant was dismissed because Briggs made no allegations in the complaint referencing him. *See id*.

On November 15, 2012, the remaining Defendants filed the instant (Doc. 25) motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Defendants first argue that Counts 1 and 2 fail to state a claim upon which relief can be granted. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly* (internal quotations omitted)). While detailed factual allegations are not required, the

plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements". *Twombly*, 550 U.S. at 555 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Finally, we recognize that p*ro se* civil rights complaints are not held to stringent standards expected of pleadings drafted by attorneys; rather, pro se complaints are to be liberally construed. *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988).

### A. Failure to Protect

Count 1 fails to states a claim against the Defendants for failure to protect in violation of the Eighth Amendment of the U.S. Constitution. Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citation and internal quotations omitted). "To state a failure to protect claim, a plaintiff-inmate must allege that (1) he is incarcerated under conditions posing a substantial risk of serious harm, and (2) defendant-officials acted with deliberate indifference to that risk." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (citing *Farmer*) (internal quotations omitted). With respect to the second element, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (citing *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991)) (internal quotations omitted).

In *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996), the Seventh Circuit had an opportunity to consider an analogous scenario to this case where an inmate attempted to maintain an Eighth Amendment claim against prison officials for past failures to take measures to protect a prisoner from inmates known to pose a danger to him. Like the case at bar, the plaintiff in

*Babcock* complained about his retention in administrative detention and delays in transferring him to another facility after he requested transfer due to the presence of members of a gang which had threatened to kill him in prison. *See id*. at 271. The *Babcock* court explained that it was the "reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment," and the plaintiff's "claim of psychological injury does not reflect the deprivation of 'the minimal civilized measures of life's necessities …' " *Id*. at 272 (citations omitted). In sum, the plaintiff had alleged a "failure to prevent exposure to risk of harm" rather than a "failure to prevent harm." *Id*. The *Babcock* court concluded that the plaintiff could not maintain a claim based solely on prison officials' past failure to take measures to protect the prisoner from inmates known to pose a danger to the prisoner where "exposure to risk of harm cannot be said to result from an official's malicious or sadistic intent." *Id*. at 270.

Here, the allegations of the complaint state that prison officials did not become aware of a risk of harm to Briggs' safety until October 18, 2010, when Briggs wrote a note to Defendant Lehr. *See* Doc. 1 at 12 ¶ 42. Briggs went back to his cell and feared an assault from his cellmate that was extorting money from him. *See id*. at 12-13 ¶ 43-45. Shortly thereafter, the Defendants took Briggs out of his cell after being alerted by Briggs' aunt of a risk of harm to him. *See id*. at 13 ¶ 47. The Defendants explained that Pinckneyville did not have protective custody so he would need to be placed in segregation. *See id*. at 13-14 ¶ 48. The Defendants took further protective measures when they updated their records to indicate that Briggs and his former cellmate were to be kept separate from eachother. *See id*. at 16 ¶ 56. Briggs does note a subsequent encounter with his former cellmate on January 10, 2011, when he was threatened in the chow hall. *See id*. at 17 ¶ 64. However, no assault occurred, the Defendants promptly

4

confined Briggs' former cellmate in segregation, and then moved him to another facility. *See id*. Finally, Briggs was moved to another facility on May 26, 2011. *See id*. ¶ 65.

These allegations indicate that the Defendants may have been negligent in two somewhat brief instances where Briggs found himself in a situation where he feared an assault from his cellmate. Ultimately, Briggs alleges that the Defendants responded to the risk of harm briefly after they became aware of it by taking protective measures for Briggs' safety. Similar to *Babcock*, Briggs only alleges a "failure to prevent exposure to risk of harm" rather than a "failure to prevent harm." *See Babcock*, 102 F.3d at 272. In sum, Briggs does not allege that the exposure to risk of harm resulted from the Defendants' malicious or sadistic intent or deliberate indifference to a substantial risk of serious harm. Thus, Count 1 should be dismissed. *See id*.

### B. False Disciplinary Report

The Defendants argue that the due process in Count 2 should also be dismissed. Briggs alleges that the Defendants intentionally wrote a false disciplinary ticket in order to get him placed in segregation for 30 days. *See* Doc. 1 at 13-14 ¶ 48. The allegations state that the Defendants believed this action was necessary in order to protect Briggs because the prison did not have any other protective custody options. *See id*. It is then alleged that the Defendants acknowledged that the offense should be expunged, but Briggs would have to utilize the grievance process to do so. *See id*. at 15-16 ¶ 54-58. Briggs filed the grievance, but it was denied on every step of the adjudication process. *See id*. at 16-17 ¶ 59-62.

Count 2 fails to state a claim upon which relief can be granted because no liberty interest was implicated by the Defendants' decision to place Briggs in segregation for a period of 30 days. The U.S. Supreme Court in has held that no liberty interest is implicated under the due process clause when an inmate in confined in segregation for a short period time, unless an

"atypical, significant deprivation" is imposed upon the inmate "in relation to the ordinary incidents of prison life." *See Sandin v. Conner,* 515 U.S. 472, 486, 115 S. Ct. 2293, 2301, 132 L. Ed. 2d 418 (1995). The Seventh Circuit has acknowledged that, in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small." *Wagner v. Hanks*, 128 F.3d 1173, 1175-76 (7th Cir. 1997) ("when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty."). Interpreting this jurisprudence, this District has stated:

> This Court understands *Sandin* and *Wagner* as holding that even a prisoner's arbitrary confinement in disciplinary segregation, administrative segregation, or protective custody does not implicate any liberty interest—under either the Due Process Clause or state law (even if such confinement is arbitrary)—so long as the confinement itself does not constitute an "atypical, significant deprivation." A particular confinement is "atypical [and] significant" only if the conditions under which the inmate is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner*, 128 F.3d at 1175. If the inmate is housed at the most restrictive prison in the state, the inmate must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.*

*Bakr v. Walker*, 10-627-MJR, 2011 WL 884134 (S.D. Ill. Mar. 11, 2011). Similar to *Bakr*, Briggs alleges that he was arbitrarily confined in segregation and received a C-Grade demotion. There is nothing in the complaint suggesting that Briggs was confined in conditions substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Thus, Count 2 of the complaint should also be dismissed. *See Bakr*, 2011 WL 884134 *3.

## RECOMMENDATION

It is recommended that the Defendants' (Doc. 25) motion to dismiss be granted. If this Report and Recommendation is adopted in its entirety, this case can be closed.

**SO RECOMMENDED.**

**DATED: February 25, 2013.**

> *s/ Philip M. Frazier*
> **PHILIP M. FRAZIER**
> **UNITED STATES MAGISTRATE JUDGE**